UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

TIMOTHY JAMES THOMAS,
*Petitioner*,

v.

CHADWICK DOTSON,
*Respondent.*

1:24-cv-00668-MSN-LRV

MEMORANDUM OPINION

Timothy James Thomas ("Petitioner" or "Thomas"), a Virginia inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his August 9, 2017 convictions in the Circuit Court for the City of Hampton, Virginia for twelve counts of producing child pornography and one count of forcible sodomy. ECF 1. On December 3, 2024, Respondent filed a Motion to Dismiss, Rule 5 Answer, and a brief in support, with exhibits. ECF 15–17. On December 9, 2024, the Court advised Petitioner of his opportunity to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (ECF 21), and he filed his response on December 30, 2024. ECF 22. On March 14, 2025, Respondent filed an amended Motion to Dismiss, Rule 5 Answer, and a brief in support, with exhibits. ECF 24–26. On March 21, 2025, the Court again advised Petitioner of his opportunity to file responsive materials pursuant to *Roseboro*. ECF 27. Petitioner has not filed any further responses and the matter is now ripe for disposition. For the reasons that follow, Respondent's Motion to Dismiss will be granted, and the petition will be dismissed with prejudice.

**I. Procedural History**

During a two-day jury trial on August 8–9, 2017 in the Circuit Court for the City of Hampton, Thomas was convicted of twelve counts of producing child pornography, in violation

of Virginia Code § 18.2-374.1(B)(2), and one count of forcible sodomy, in violation of Virginia Code § 18.2-67.1. *Commonwealth v. Thomas*, Case Nos. CR 16–765-01–13 (Hampton Cir. Ct. Aug. 9, 2017), at 131–32, 198–99. The trial court sentenced him to five years in prison on each count of producing child pornography; and life in prison for forcible sodomy. The judgment order was entered on August 9, 2017.

On December 26, 2017, Thomas, by counsel, filed a petition for appeal in the Court of Appeals of Virginia, challenging the sufficiency of the evidence to support his convictions. ECF 17-2 at 21, 26. On April 23, 2018, the court found the evidence sufficient and denied the petition. *Id.* at 26–28. The court summarized the evidence as follows:

> [T]he evidence proved that on January 29, 2016, J.J., then eight years old, was visiting Ansonia Harris, her aunt, who was living at J.J.'s grandmother's house. Harris was dating appellant at that time, and he was also present at the house. Appellant stated that he wanted to use the internet connection at J.J.'s house, and Harris asked him to take J.J. and her two younger brothers with him. When they arrived at J.J.'s house, J.J.'s brothers went upstairs and J.J. went into the kitchen to prepare a snack. Appellant followed her into the room. He "yanked [her] down," "unzipped his zipper," and "pulled out his wiener." Appellant forced J.J.'s mouth open and put his penis in her mouth. Appellant had "his phone out" and took pictures while his penis was inside J.J.'s mouth. J.J. identified herself and appellant in a series of pictures and videos introduced at trial.
>
> Harris testified she had been sleeping while appellant was at J.J.'s house with the children. When appellant returned she and appellant went out for dinner. Later that night, while appellant was sleeping, Harris retrieved appellant's phone and removed its SD card. Harris explained that an SD card is a "memory card inside of your phone." Harris put the SD card into her phone in order to view the pictures from appellant's phone. After Harris saw "inappropriate" photographs of J.J. and appellant's penis, she called the police and met them at J.J.'s house. Harris gave the SD card to one of the responding police officers.
>
> Harris confirmed during cross-examination that she visited appellant while he was incarcerated. She explained that she met with him because he owed her money. She also stated she "went there to ask him not to humiliate [her] niece by putting her on the stand."
>
> Sergeant Mary Shackelford examined the SD card that Harris had turned over to the police and saw nine pictures and three videos "which displayed [J.J.] with male genitalia." The images "were stamped January 29th, 2016" and "time stamped from 6:01 and 24 seconds all the way to 6:02 and 22 seconds." Master forensic specialist

2

Karyn Lawrence explained to the jury how she retrieved the images from the SD card.

*Id.* at 26–27.

Thomas, by counsel, filed a petition for appeal in the Supreme Court of Virginia, raising the same sufficiency issue, which that court refused on November 19, 2018.[1]

Thomas did not file a state petition for writ of habeas corpus in either the circuit court or the Supreme Court of Virginia. ECF 1 at 3, 6, 7, 9, 10, 12.

**II. The Federal Petition**

On April 15, 2024,[2] Petitioner filed the instant federal habeas petition, pursuant to 28 U.S.C. § § 2254, in this Court, and raises the following claims:

I. "Ineffective Assistance of Counsel (Carter Phillips). Mr. Phillips was assigned to [Thomas's] case (jury trial only) and [his] appeal process. During [Thomas's] appeal process [Mr. Phillips] refused to communicate with [him] about the status of [his] appeal. [Thomas] wrote numerous letters to him asking about [his] appeal. Then he just flat-out refused to send [Thomas his] case filed until [Thomas] wrote the State Bar. By 2020[,] he finally sent [Thomas his] file but the time limit on [Thomas's] appeal to the United States Court of Appeals was missed along with the time limit for [Thomas's] habeas corpus." ECF 1 at 5.

II. "Ineffective Assistance of Counsel (David Mitchell Lee). Mr. Lee was assigned to [Thomas's] case before [his] jury trial. [Mr. Lee] withdrew from [Thomas's] case on 12/21/16 due to a conflict of interest. [Mr. Lee's] office had represented one of the witnesses against [Thomas]. Mr. Lee did a background check on only one witness against [Thomas ,] Ansonia Harris[,] but didn't do one on the other which was her sister (mother of the victim)[.] 3/28/16 is when [Mr. Lee] did his background on the list of witnesses he had. [Thomas] waived [his] preliminary [hearing] on the advice of Mr. Lee on 10/20/16. The Commonwealth brought this to Mr. Lee['s] attention on 12/07/16. [Mr. Lee] withdrew later."

---

[1] *Thomas v. Commonwealth*, Record No. 180689, at 10, 18.

[2] Thomas included a letter with his § 2254 petition dated April 15, 2024, which is the earliest date he could have given it to prison authorities to mail to this Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (a pleading is filed at the time a prisoner delivers it to the prison authorities for forwarding to the court clerk).

3

          Thomas "didn't have [his] case file [during] the time of [his] appeal to get these details. [He] has [the details] now. [Thomas] assumed Mr. Lee did a background check on both witness[es] not just the one." *Id.* at 7.

III.    "Prosecution Misconduct (Adrienne R. Mauney). Mrs. Mauney was assigned to [Thomas's] case as the Commonwealth for the state. Mrs. Mauney witness[ed] Ansonia Harris admitting to making a copy of pictures that the state used to convict [Thomas]. Turning one picture into two. Ansonia Harris admitt[ed] this to the police and again on the stand. Mrs. Mauney never looked into this fact. On the phone expert report there are two different pictures with the same time stamp down to the second. Tampered evidence Mrs. Mauney allowed. These were details in [Thomas's] case file [that he] didn't have at the time because [his] appeal attorney refused to send [his] file to [him]." *Id.* at 8–9.

IV.    "Ineffective Assistance of Counsel (Carter Phillips). Mr. Phillips . . . refused to send [Thomas his] case file after [his] convictions for 3 years. In turn[,] that denied [Thomas] access to the Courts because [he] needed certain details about certain matters [he] wanted to file on [his] habeas corpus. [Thomas] was unable to do that because of Mr. Phillips actions." *Id.* at 10.[3]

### III. Statute of Limitations

Respondent seeks dismissal of the federal habeas petition as untimely. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus must be dismissed if it is filed more than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

---

[3] A district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." *See Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); *Frey v. Schuetzle*, 78 F.3d 359, 360–61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief.").

Petitioner's direct appeal concluded on November 19, 2018 when the Virginia Supreme Court refused his petition for appeal, which made his convictions final for purposes of applying the federal habeas statute of limitations 90 days later, on Tuesday, February 19, 2019.[4] *See Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012) (holding that, under § 2244(d)(1)(A), a judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires"). Petitioner had one year from that date, or until Wednesday, February 19, 2020, to file his § 2254 petition. Absent statutory or equitable tolling, the federal petition is untimely.

### A. Statutory Tolling

In calculating the one-year period, the Court must exclude the time during which properly filed state collateral proceedings are pending. *See* 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Thomas admits in his § 2254 petition that he did not seek post-conviction relief in state court. ECF 1 at 3, 6, 7, 9, 10, 12. Therefore, there is no basis for statutory tolling.

### B. Equitable Tolling

To qualify for equitable tolling, a petitioner must demonstrate "(1) that he ha[d] been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" that prevented timely filing. *Pace*, 544 U.S. at 418. A petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). "Equitable tolling is an exceedingly narrow window of relief." *Finch v. Miller*, 491 F.3d 424, 427–28 (8th Cir. 2007) (citation omitted). The extraordinary circumstance component

---

[4] The nineteenth day fell on Sunday, February 17, 2019 and the next day, Monday, February 18, 2019, was a holiday.

5

requires Petitioner to establish that the circumstance that prevented him from complying with a deadline was "an 'external obstacle' to timely filing, *i.e.*, that 'the circumstances that caused [his] delay must have been beyond [his] control.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016). Lastly, a petitioner is obliged to specify the steps he took in diligently pursuing his federal claim, *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001), and he must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

Moreover, the party seeking equitable tolling must "show diligent pursuit of his claim '*throughout the period he seeks to toll*.'" *Harper v. Ercole*, 648 F.3d 132, 139 (2d Cir. 2011) (quoting *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007)) (emphasis in original). Indeed, equitable tolling is available only in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Green v. Johnson*, 515 F.3d 290, 304 (4th Cir. 2008).

Thomas admits that his § 2254 "petition is untimely," but he attributes his untimely filing to his attorney's "failure to communicate with [him] about the status of [his] appeal." ECF 22 at 1. Thomas argues that his case file had "vital information needed to file [his] state claims effectively," and that he had to contact the Virginia State Bar ("VSB") to obtain his case file. ECF 22 at 2–3. Thomas attached a letter dated June 23, 2020 from the VSB to his appellate counsel, Bradford Carter Phillips, indicating Thomas had filed a complaint against him for not "fil[ing] documents." ECF 22-1 at 4. A second attachment is a VSB letter dated July 22, 2020, indicating that Phillips had sent Thomas "the entire file and transcripts." *Id.* at 5. Thomas's reply to the motion to dismiss

6

indicates that Phillips sent him his case file on "7/14/20," ECF 22 at 3, which is consistent with the VSB's July 22, 2020 letter. Based upon Thomas's admissions, he had his attorney's file on or around July 14, 2020. For purposes of this motion, the Court will assume Thomas had the file by Monday, January 4, 2021.[5] Further, the Court will further assume for the purposes of this motion that Thomas had one year from January 4, 2021 to file his federal habeas petition.[6] Thomas, therefore, had until Tuesday, January 4, 2022, more than a full year to prepare a habeas petition and file it before his federal habeas statute of limitations expired. Despite making liberal assumptions in Thomas's favor, however, Thomas did not file his § 2254 petition in this Court until April 15, 2024, which was more than two years after the federal statute of limitations had lapsed under very favorable assumptions.

Moreover, Thomas was aware of the facts for most of his claims at trial or before he received his file in July 2020. Claim I involved the alleged lack of communication by appellate counsel; Claim II involved the withdrawal of attorney Lee before trial; and Claim IV concerned

---

[5] In his § 2254 petition, Thomas admits he had Phillips' case file "[b]y 2020." ECF 1 at 5. The Court is using January 4, 2021, because it is past the end of 2020, and Petitioner had four to five months between receiving the file on July 14, 2020 and the end of that year to review it and file for post-conviction relief.

[6] Thomas is not entitled to a full year, only a reasonable time once the reason for the tolling has ended.

> "[E]ven in situations in which equitable tolling initially applies, a party must file suit within a reasonable period of time after realizing that such a suit has become necessary." *Walker v. Frank*, 56 F. App'x 577, 582 (3d Cir. 2003). "A grant of equitable tolling, unlike statutory tolling, does not shift the deadline so that each day of tolling results in a one-day postponement of the deadline." *Ragan v. Horn*, 598 F. Supp.2d 677, 680 (E.D. Pa. 2009) (citing *Phillips v. Heine*, 984 F.2d 489, 492 (D.C. Cir. 1993)), *rev'd on other grounds*, 411 F. App'x 491 (3d Cir. 2011). Once the extraordinary circumstances justifying equitable tolling have ended, the petitioner must file as soon as reasonably possible. *Id.*; *Colwell v. Tanner*, 79 F. App'x 89, 92 (6th Cir. 2003) (equitable tolling continues only for the time during which "the conditions that served to justify equitably tolling the statute of limitations" existed); *see also Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 167 F.3d 1170, 1175 (7th Cir. 1999) (tolling does not provide "an automatic extension of indefinite duration" and the plaintiff must file within a reasonable period of time).

*Carpenter v. Clarke*, No. 1:22CV605 (AJT/WEF), 2022 WL 17325986, at *8, n.5 (E.D. Va. Nov. 29, 2022). *Heck v. Humphrey*, 997 F.2d 355, 357 (7th Cir. 1993) ("[N]o matter how much his carelessness or sloth may have contributed to the delay in the prosecution of his claim, the doctrine of equitable tolling gives the plaintiff just so much extra time as he needs, despite all due diligence on his part, to file his claim.") (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451–53 (7th Cir.1990)), *aff'd*, 512 U.S. 477 (1994).

the failure to provide the case file. The record establishes that these three claims involve matters that Thomas was aware of before he obtained the case file in July 2020. The only claim based upon the record that Thomas alleges he did not have knowledge of before obtaining his counsel's file in July 2020 is Claim III. Claim III concerns a forensic report, which Thomas attached to his reply. ECF 22-3 at 6–8. Thomas argues that this report was the "vital information" in 2016 (*see* ECF 22 at 2), well before Monday, January 4, 2021. The record, however, does not support a finding that Thomas was diligent in pursuing his federal habeas claims because after the impediment upon which he relies— obtaining his case file from his counsel—was removed in July 2020, Thomas waited more than three years before he filed his federal habeas petition. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) ("[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling.") (collecting cases).

To be sure, once the circumstance that prevents a federal habeas from being timely filed ends, the statute of limitations will not be tolled "indefinitely." *Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003). Thomas bears the burden of demonstrating "the necessary causal link between" his alleged extraordinary circumstances "and the untimeliness" of the habeas action filed in federal court. *United States v. Buckles*, 647 F.3d 883, 890 (9th Cir. 2011). Where additional delay in filing a federal habeas action "is not attributable to" the extraordinary circumstances, equitable tolling does not apply. *Id.*; *see Valverde*, 224 F.3d at 134 ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."); *Harper*, 648 F.3d at 139 ("[E]quitable tolling should be . . . circumscribed to the period for which diligence and causation are established."). Here, by his own admissions in state habeas, the claims

8

and the necessary facts to support his federal § 2254 claims were available in July 2020. As noted herein under a generous view, Thomas waited several years to file his habeas petition.

Thomas's federal petition is untimely, and the motion to dismiss will be granted.

### IV. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss, as amended (ECF 16 and 25) will be granted, and the petition will be dismissed by an order to be issued with this Memorandum Opinion.

/s/
Michael S. Nachmanoff
United States District Judge

April 28, 2025
Alexandria, Virginia